# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In the Matter of the Guardianship of: | No.  56192-1-II |
| CORYANNE HARRIS, | (Consolidated with 56212-0-II) |
| | UNPUBLISHED OPINION |
| An incapacitated person. | |

LEE, J. — Brenda Knight and Richard Harris' daughter, Coryanne Harris,[1] is an incapacitated adult.  Knight appeals the superior court's orders denying her motion to modify Coryanne's guardianship and granting Harris' petition to transfer the guardianship to New York.  We affirm.

## FACTS

Harris is Coryanne's court-appointed guardian.  In May 2021, Harris filed a notice of substantial change in circumstances, advising the superior court that he intended relocate to New York with Coryanne in September.

In July 2021, Knight filed a motion to modify Coryanne's guardianship.  Knight argued that there was good cause to terminate Coryanne's current guardianship and sought appointment of a guardian ad litem (GAL) for Coryanne.  Knight asserted good cause existed because Coryanne was not receiving sufficient care and Coryanne's personal and medical needs were not being met.  Knight supported her motion with her own declaration documenting all of her concerns regarding

---

[1] Because Richard Harris and Coryanne Harris share the same last name, we use Coryanne's first name for clarity.  We intend no disrespect.

Coryanne's care and hygiene. Knight alleged that Coryanne's weight had been fluctuating, she did not have an appropriate sleep schedule, she had dirty hands and clothes, and she had bruising. Knight attached numerous photos that she took during Coryanne's visits with her documenting her concerns. Knight admitted, "The reality is that I do not know what care Coryanne is getting." Clerk's Papers at 15. But Knight explained that she was bringing the matter to the superior court because Harris was not responsive to her concerns. Knight requested that a GAL be appointed to investigate her concerns.

The superior court issued a show cause order to Harris. The superior court also appointed a GAL for Coryanne. Harris responded to the motion, denied Knight's allegations, and stated that the motion should be denied.

The GAL investigated the allegations in Knight's motion by conducting interviews with Knight, Harris, a physician's assistant from Coryanne's physician's office, and the supervisor from Coryanne's daily care agency. In the investigation, the GAL began by interviewing Knight about the concerns she raised in the motion to modify. Then the GAL met with Harris and discussed the concerns raised by Knight. The GAL had direct contact with Coryanne and noted that Coryanne appeared clean. The physician's assistant confirmed Harris' statement that they see Coryanne regularly and believed that Coryanne was receiving great medical care. The physician's assistant also explained that Coryanne's weight fluctuation was a normal side effect of Coryanne's medication and was carefully monitored. The supervisor of Coryanne's daily care givers stated that none of Coryanne's caregivers expressed any concerns about Coryanne's care.

The GAL filed a report on the motion to modify the guardianship. Based on his investigation, the GAL did not identify any concerns in Harris' performance as Coryanne's guardian. The GAL recommended denying the motion to modify the guardianship.

At the hearing on Knight's motion to modify the guardianship, the superior court noted that it was extremely familiar with the case because it had been presiding over hearings in the guardianship since 2005. The superior court acknowledged that the GAL's report was very thorough and was based, in part, on information from third parties who saw Coryanne regularly. The superior court noted,

> [T]his has been Ms. Knight's concern for over a decade, I believe, about whether or not Mr. Harris can meet Coryanne's needs, whether or not she is properly bathed and now all of those things.

Verbatim Report of Proceedings at 11. However, the superior court determined that the evidence showed Coryanne was well cared for and her needs were being met. The superior court denied the motion to modify the guardianship.

In August 2021, Harris petitioned the superior court to transfer Coryanne's guardianship from Washington to New York. Harris intended to move Coryanne to New York in September 2021. In his declaration, Harris stated that he would ensure that Coryanne would be able to continue visits with Knight.

The GAL was reappointed to investigate Harris' petition to transfer the guardianship. The GAL interviewed Harris about the move to New York. Harris explained to the GAL that the move to New York would move Coryanne closer to Harris' extended family in the area. The GAL also reviewed records regarding the property and the house that was being built for Harris and Coryanne. Harris provided the GAL with information about transferring Coryanne's disability benefits to New York. Also, Harris was working with New York's comprehensive resources for care planning for people with disabilities to ensure that Coryanne was connected with services in New York. The GAL also interviewed Knight about her concerns that the move would isolate Coryanne from her maternal relatives.

Upon completion of the investigation, the GAL filed an additional report regarding the petition to transfer Coryanne's guardianship to New York. Ultimately, the GAL determined that the home in New York would be appropriate and Coryanne would be able to receive care and benefits in New York. GAL concluded that the move to New York would be in Coryanne's interests and recommended that the superior court authorize transfer of the guardianship.

At the hearing on the petition to transfer the guardianship, the superior court ruled that it was in Coryanne's interest to remain in Harris' care. The superior court acknowledged Knight's concerns and the pictures she had presented, but stated that all allegations had been investigated and found to be without merit. The superior court approved transfer of Coryanne's guardianship to New York.

Knight appeals.

ANALYSIS

A.   ALLEGED DUE PROCESS VIOLATION

Knight argues that the superior court violated her right to due process by failing to consider her relevant evidence; specifically, the photos supporting her concerns and evidence that Harris was misrepresenting the property and home Coryanne would be moving to in New York.[2] We disagree.

---

[2] Knight also assigns error to the superior court's failure to consider whether Coryanne suffers from fetal alcohol syndrome asserting that "[i]t was alleged earlier in this case that Coryanne had fetal alcohol syndrome." Br. of Appellant at 6. Here, the superior court made no finding that Coryanne suffered from fetal alcohol syndrome, nor did the superior court rely on allegations regarding fetal alcohol syndrome in making either decision at issue in this case. It is unclear what earlier allegation Knight is referring to and it does not appear to be an allegation related to the decisions currently on appeal. Because the allegations related to fetal alcohol syndrome are unrelated to the orders that are on appeal, this assignment of error is outside the scope of this appeal.

Knight argues a due process violation based on an allegation that the trial court failed to consider her evidence. This argument fails as it misrepresents the record and is merely an attempt to have us reweigh the evidence.

Contrary to Knight's representation, the record shows that the superior court did not refuse to consider Knight's relevant evidence; rather, the superior court weighed Knight's evidence against the contradictory evidence presented. Knight presented photos she claimed supported her concerns, but those concerns were investigated by the GAL, and the GAL did not identify any concerns in Harris' performance as Coryanne's guardian. Further, Knight's allegations that Harris was misrepresenting the property Coryanne would be moving to were addressed in the GAL's report of the investigation into the petition to transfer the guardianship. Thus, the GAL investigated Knight's allegations, did not identify any concerns in Harris' performance as Coryanne's guardian, and found the allegations to be without merit.

The superior court expressly noted that it was familiar with the case and had considered the evidence, including Knight's photographs and the GAL reports of his investigations. Because the only basis for Knight's alleged due process violation is that the superior court did not consider her evidence, but the record shows that the superior court did consider all the evidence, Knight's challenge fails.

B. ATTORNEY FEES ON APPEAL

Harris requests attorney fees be awarded as sanctions under RAP 18.9(a) for filing a frivolous appeal. RAP 18.9(a) allows us to award attorney fees as a sanction for filing a frivolous appeal. *Sue Jin Yi v. Kroger Co.*, 2 Wn. App. 2d 395, 410, 409 P.3d 1191 (2018). "'An appeal is frivolous if, considering the entire record, the court is convinced that the appeal presents no debatable issues upon which reasonable minds might differ, and that the appeal is so devoid of

5

merit that there is no possibility of reversal.'" *Id.* (quoting *Advocates for Responsible Dev. v. W. Wash. Growth Mgmt. Hr'gs Bd.*, 170 Wn.2d 577, 580, 245 P.3d 764 (2010)).

Knight's appeal is frivolous because her entire appeal is based on the superior court's failure to consider evidence the superior court explicitly stated that it did consider. Therefore, Knight's appeal is devoid of merit and there is no possibility of reversing the superior court's orders. Because Knight's appeal is devoid of merit, we grant Harris' request for attorney fees.

We affirm the superior court's guardianship orders.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Worswick, P.J.

Maxa, J.